IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE D. HARPER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 14-639 |
| CORIZON, LOUIS GIORLA, MICHELLE FARRELL, FRANK ABELLO, MARIEL TRIMBLE, and PANTAL JEAN, | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 **AUGUST 11, 2014**

Presently before this Court is Plaintiff, Maurice D. Harper's ("Harper") "Motion for A Temporary Restraining Order And A Preliminary Injunction Order To Show Cause And Temporary Restraining Order," the Response in Opposition filed by Defendant, Corizon, and the Reply by Harper in the from of a Declaration. For the reasons set forth below, the Motion is denied.

**I.      BACKGROUND**

Harper filed suit against Defendants under the Civil Rights Act, 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Comp. at 6. Specifically, Harper alleges that Defendants have ignored his need to see an Ear, Nose and Throat Specialist ("ENT Specialist") regarding his acid reflux disease, which has resulted in a hole on the left side of his throat.[1] Id. at 3. Harper filed his "Motion for

---

[1] Harper states that "ENT Specialist Services are not provided in prison at Curran-Fromhold; prisoners needing such services must be taken to an outside facility."  (Pl.'s Mot. for TRO and/or Prel. Inj., Harper Decl. ¶ 8.)

A Temporary Restraining Order And A Preliminary Injunction Order To Show Cause And Temporary Restraining Order" on May 14, 2014.  In support of his claim, Harper states:

> I have not been provided with a healthy diet and sent to see an ENT Specialist because there is an informal policy at Curran-Fromhold to giving low priority to medical needs of inmates diagnose [sic] with acid reflux disease and of refusing to provide them with medical care outside the prison unless their medical condition is life-threatening.

(Pl.'s Mot. for TRO and/or Prel. Inj., Harper Decl. ¶ 7.)

On June 17, 2014, Defendants were ordered to show cause in writing as to why Harper's request for injunctive relief should not be granted.  On July 18, 2014, Corizon filed a Brief in Opposition to Harper's Motion for Preliminary Injunctive Relief which included a Certification of a physician employed by Corizon, Bruce Blatt, M.D., dated July 18, 2014.[2]  (Def.'s Br. Opp'n Pl.'s Mot. for TRO and/or Prel. Inj.; Ex. A., Blatt Decl.)  Dr. Blatt, a Board Certified Internist who is a licensed physician in the Commonwealth of Pennsylvania, is employed by Corizon at the Philadelphia Prison System.  (Id. ¶¶ 1- 3.)  Dr. Blatt stated that he examined Harper's Prison Medical Chart which contained entries made at the time of the medical encounters with Harper.[3] (Id. ¶ 5.)  Dr. Blatt states that "[o]n October 18, 2103, Physician's Assistant Sarskaya requested a referral for an ENT Specialist for post nasal drip, and a possible visual opening on the left side of the pharynx with purple appearance of the uvula."  (Id. ¶ 7.)  Dr. Blatt further states that "[t]he ENT referral of October 18, 2013, was not approved apparently because it was determined that Mr. Harper did not have a 'hole in his throat.'"  (Id. ¶ 8.)  Dr. Blatt listed nine dates from

---

[2] Corizon Health, Inc. is a corporate prison health care provider.  Talbert v. Kaplan, No. 12-6533, 2013 WL 4434214, at *1, 4 (E.D. Pa. Aug. 20, 2013).

[3] Prison Medical Charts are kept in the usual course of business of Corizon at the Philadelphia Prison System.  (Def.'s Br. Opp'n Pl.'s Mot. for TRO and/or Prel. Inj.; Ex. A., Blatt Decl., ¶ 5.)

November 2013 through March 2014 in which Harper was seen by members of the prison medical staff mainly pertaining to throat and digestive issues.[4]  (Id., ¶ 9.)  According to Dr. Blatt, he examined Harper on May 16, 2014.  (Id. ¶ 11.)  He states that "[b]ased upon my examination of the patient, it was my opinion that an ENT (ear, nose, and throat) referral was NOT medically necessary.  Based upon my examination of the patient, **the patient did NOT have a hole in his throat**. . . . I scheduled a follow-up appointment in 30 days."  (Id.)

Dr. Blatt states that a barium swallow test of Harper took place on June 19, 2014, at Bustleton Radiology.[5]  (Id., ¶ 14.)  According to Dr. Blatt, "[t]he report dated June 29, 2014, states the esophagus demonstrates no obstruction or constricting lesion or hiatal hernia.  No free gastoesophageal reflux was noted.  The Impression is: (1) the hypopharynx is normal roentgenographically; (2) The esophagus is negative to thin liquid barium."  (Id.)  Dr. Blatt states that he reviewed the June 19, 2014 barium swallow report and "**[t]he report means that the patient's throat is normal**."  (Id.)

Dr. Blatt states that, on June 27, 2014, he spoke with Harper in the Medical Department. (Id., ¶ 16.)  He states that he reviewed the barium swallow test results with Harper.[6]  (Id.) Additionally, he states that he "told Mr. Harper that there was no evidence of pharyngeal or

---

[4] Dr. Blatt noted that Harper entered the Philadelphia Prison System on or about November 27, 2012. (Def.'s Br. Opp'n Pl.'s Mot. for TRO and/or Prel. Inj.; Ex. A., Blatt Decl. ¶ 6.)  Dr. Blatt states that "his medical chart contains numerous entries over time regrading problems swallowing due to allergies, and upper respiratory complaints."  (Id.)

[5] "A barium swallow, or upper [Gastrointestinal ] series, is an x-ray test used to examine the upper digestive tract (the esophagus, stomach, and small intestine)." Harvard Health Publications, htttp://www.health.harvard.edu/diagnostic-tests/barium-swallow.htm (last visited Aug. 8, 2014).

[6] Harper states that "[c]ontrary to Bruce Blatt [sic] recollect [sic] on June 27, 2014, Mr. Blatt did not review the barium swallow test results with me.  'I never seen [sic] the test results.'"  (Pl.'s Decl., ¶ 12.)  Whether Dr. Blatt reviewed the barium swallow test results with Harper is immaterial to our analysis.

3

esophageal lesion and no reflux.  **The patient does NOT have a hole in his throat**." (Id.)  Dr. Blatt states that "[e]ven though the barium swallow was normal, I ordered a consult for ENT due to the patient's persistent complaints of pharyngeal discomfort.  That referral has not taken place yet." (Id.)  Dr. Blatt concludes his Certification by stating that

> It is my opinion within a reasonable degree of medical certainty, that Mr. Harper does not have any emergent medical conditions.  The patient's current medical conditions consisting of complaints about swallowing and rectal bleeding are already being addressed by the medical staff.  It is also my opinion based upon my own examination of the patient that he does not have a hole in his throat.[7]

(Id., ¶ 17.)

Harper's Declaration replies to Dr. Blatt's Certification by stating that he and two hospital transport officers viewed the barium swallow x-ray and saw a dark spot the size of a quarter on his throat.  (Pl.'s Decl., ¶¶ 7-11.)  Harper states that when he explained that he had viewed a dark spot to Dr. Blatt, he was told that "it may have been the result of an [sic] air pocket." (Id., ¶ 8.)  Harper's Declaration includes exhibits consisting of various personal medical records and Sick Call Requests.  (Id., Exs. A-C.)

---

[7] Harper's Complaint does not mention rectal bleeding; however, his motion for injunctive relief includes a statement that "[he] is suffering irreparable harm in the form of bleeding hemorrhoid [sic], which Im [sic] in extreme pain, fatigued and suffer from dizziness and stomach pains and an increasing risk of cancer and death." (Pl.'s Mot. for TRO and/or Prel. Inj., Pl.'s Decl., ¶ 12.)  Regarding this issue, Dr. Blatt's Certification states that Harper has been seen by members of the medical staff and he examined him on May 16, 2014.  (Def.'s Br. Opp'n Pl.'s Mot. for TRO and/or Prel. Inj.; Ex. A., Blatt Decl., ¶¶ 10-12.)  Additionally, lab work, hemoccult tests, and medicine were ordered.  (Id.)  Dr. Blatt states that he re-examined Harper "[o]n June 11, 2014, . . . and I ordered a G.I. consult to follow-up on the patient's complaints of rectal bleeding.  That study has been scheduled with a medical provider outside the Prison for a date in July 2014. (That date is not disclosed here due to security protocols.)" (Id., ¶ 13.)  In his Reply to Dr. Blatt's Certification, Harper does not mention his rectal bleeding, instead he solely focuses on the throat issues.  (See Pl.'s Decl.)  Regarding any rectal bleeding, Dr. Blatt's medical opinion, within a reasonable degree of medical certainty, that Harper does not have any emergent medical condition and his rectal bleeding is already being addressed by the medical staff is not refuted.

## II.     LEGAL STANDARD

Through either a TRO or a permanent injunction, Harper seeks the following: to arrange for an examination and a plan of treatment by a qualified ENT Specialist; to be provided with a healthy diet; and to have an ENT Specialist's plan of treatment to be put into effect. (Pl.'s Mot. for TRO and/or Prel. Inj., Pl.'s Decl., ¶ 16.)  Though there are distinct standards necessary to attain a TRO and a permanent injunction, the elements to be proven by Harper in order to obtain such injunctive relief are similar.

For instance, to attain a TRO, Plaintiffs must establish that:  (1) Plaintiffs are likely to succeed on the merits; (2) there is a  potential for irreparable injury to Plaintiffs if relief is not granted; (3) the State Defendants will not be substantially harmed if relief is granted; and (4) the TRO will not adversely affect the public interest.[8]  Fink v. Supreme Court of Penn., 646 F. Supp. 569, 570 (M.D. Pa. 1986).  In order for the Court to grant a permanent injunction, the Plaintiff must demonstrate that: (1) Plaintiffs have shown actual success on the merits; (2) Plaintiffs will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will not result in even greater harm to the State Defendants; and (4) the injunction would be in the public interest.  See Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001) (citing ACLU v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n.2–3 (3d Cir. 1996)).

In this case, to garner a TRO and/or a permanent injunction, Harper bears the burden of establishing all four elements.  See Shields, 254 F.3d at 482; Cooper, 1993 WL 274192, at *3

---

[8]Courts within this Circuit have noted the similarities between a TRO and a preliminary injunction, and have applied the same standards in determining their application.  See Nutrasweet Co. v. Vit-Mar Enters., Inc., 112 F.3d 689, 693 (3d Cir. 1997); see also BABN Techs. Corp. v. Bruno, No. 98–3409, 1998 WL 720171, at *3 (E.D. Pa. Sept. 2, 1998) (holding that the standard for a temporary restraining order is the same as that for a preliminary injunction); Cooper v. City of Phila., 18th Dist., No. 93–3007, 1993 WL 274192, at *1 (E.D. Pa. July 2, 1993) (same).

(stating that where movant cannot establish each element of the test, a temporary restraining order should not be issued). "Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution." Steedley v. McBride, 530 F. App'x 101, 103 (3d Cir. 2013) (citing Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995)); see also Wesley v. Sec'y Penn. Dept. of Corr., No. 13-4360, 2014 WL 2699883, at *2 (3d Cir. 2014) ("Furthermore, a request for injunctive relief in the prison context must be viewed with great caution because of the intractable problems of prison administration.").

As these forms of injunctive relief share similar standards, we analyze them in conjunction. In consideration of the facts of the case, we find that Harper cannot satisfy the necessary elements to obtain either a TRO or a permanent injunction. Consequently, his Motion for Injunctive Relief will be denied.

### III.   DISCUSSION

From the outset, we note that there is no need to examine whether Harper meets all of the elements because it is abundantly clear that he cannot show the "irreparable harm" element. Harper's failure to establish "irreparable harm" alone establishes that he is not entitled to a TRO and/or Preliminary Injunction. In order to demonstrate "irreparable harm," Harper must point to an imminent risk of irreparable injury that "'cannot be redressed by a legal or an equitable remedy following trial.'" Hynoski v. Columbia Cnty. Redevelopment Auth., 485 F. App'x 559, 563 (3d Cir. 2012) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)); see also Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992) ("In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which

cannot be redressed by a legal or an equitable remedy following a trial."). The plaintiff bears the burden of establishing a "clear showing of immediate irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989) (citation omitted). "Additionally, 'a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future.'" Wesley, 2014 WL 2699883, at *2 (quoting Campbell, 977 F.2d at 91)). "Rather, the moving party must make a clear showing of *immediate* irreparable harm.'" Id. (quoting Campbell, 977 F.2d at 91)).

Harper argues that he is threatened with irreparable harm because "he has been denied care for a serious medical need contrary to a physician's instruction" and "because of the nature of his injury, if he does not receive proper treatment at the proper time, he may develop throat cancer and die." (Pl.'s Mem. Law Supp. Mot. for TRO and/or Prel. Inj. at 3-4) Although Harper makes these serious claims, he fails to provide any medical evidence in support of them, and in rebuttal to Dr. Blatt's medical opinion.[9]

In opposition, Corizon presents significant medical evidence that Harper will not suffer "irreparable harm" absent the relief sought. Dr. Blatt's Certification unequivocally states that Harper does not have a hole in his throat. (Def.'s Br. Opp'n Pl.'s Mot. for TRO and/or Prel. Inj.; Ex. A., Blatt Decl., ¶¶ 11, 16, 17.) In fact, after receiving the barium swallow test results, Dr. Blatt states that "**[Harper's] throat is normal.**" (Id., ¶ 15.) Dr. Blatt's conclusions are based upon his own examination of Harper, Harper's Medical Chart, and the results of the recent barium swallow test. Although Harper claims that he has a hole in his throat, he fails to

---

[9] Harper provides four forms pertaining to his Inmate Grievances. (See Pl.'s Req. to Expedite Inj.) In the December 5, 2013 "Finding of the Inmate Grievance," Defendant, Mariel Trimble, RN-AHSA, wrote that "[t]here is no supporting documentation for complaint of 'hole in throat.'" (Id. at 2.) She also noted that "[e]xams have shown mild discoloration on left side of throat for which patient was referred to ENT in visit on 10/18/13. Appt. is pending." (Id.) The Declaration of Maurice Harper contains some medical documentation, but none that support his claims in light of Dr. Blatt's Certification. (See Pl.'s Decl.; Exs. A-C)

convincingly dispute Dr. Blatt's opinion within a reasonable degree of medical certainty that there is no hole. Likewise, Harper does not make any showing to dispute Dr. Blatt's opinion, within a reasonable degree of medical certainty, that Harper does not have any emergent medical conditions, and that his current medical conditions, which consist of complaints about swallowing, are currently being addressed by prison medical staff. (See id., ¶ 17.) From Dr. Blatt's Certification, it does not appear that Harper has a medical condition that is growing increasingly and permanently worse without immediate treatment. Harper simply has not demonstrated that his illness is the type of serious medical condition which places him in danger of immediate harm. Since Harper bears the burden of establishing the "irreparable harm" element of the four-part test, his failure to satisfy the second element proscribes the entrance of injunctive relief by this Court. See Karpov v. Karpov, 555 F. App'x. 146, 148 (3d Cir. 2014) ("As [Plaintiff] has the burden to establish every element of the four-part test for determining whether a preliminary injunction should be granted, her failure to show immediate irreparable injury alone establishes that she is not entitled to a preliminary injunction.")

In addition, we find that Harper has not shown a reasonable probability of success on the merits. In order to prevail on an Eighth Amendment claim based on a lack of medical treatment, Harper must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Pierce v. Pitkins, 520 F. App'x 64, 66 (3d Cir. 2013) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). "Deliberate indifference requires proof that the official 'knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003)). "Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts

'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'" Id. (quoting Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). "Allegations of negligent treatment or medical malpractice do not trigger constitutional protections." Id. (citing Estelle v. Gamble, 429 U.S. 97, 105–06 (1976)). Based upon Dr. Blatt's description of the medical treatment offered and given to Harper to date, there is a low probability that Harper will be successful in meeting this standard.

### IV.     CONCLUSION

We note that an injunction is "an extraordinary remedy, which should only be granted in limited circumstances." Novartis Consumer Health v. Johnson & Johnson- Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (citation omitted); see also Am. Tel. & Tel. Co. v. Winback & Conserve Prog., Inc., 42 F.3d 1421, 1427 (3d Cir. 1994) (stating that a preliminary injunction is "an extraordinary remedy" and "should be granted only in limited circumstances"). As Harper has the burden to establish every element of the four-part test for determining whether injunctive relief should be granted, his failure to show the "irreparable harm" and "success on the merits" factors establishes that he is not entitled to injunctive relief. See Karpov, 555 F. App'x. at 148. Consequently, Harper's Motion for a TRO and/or Permanent Injunction is denied.

An appropriate Order follows.