# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MAURICE D. HARPER, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.  14-639 |
| | : | |
| CORIZON, LOUIS GIORLA, MICHELLE | : | |
| FARRELL, FRANK ABELLO, MARIEL | : | |
| TRIMBLE, and PANTAL JEAN, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                    **JANUARY 12, 2015**

Presently before this Court is Plaintiff, Maurice D. Harper's ("Harper") "Petition for A Temporary Restraining Order And A Preliminary Injunction," and the Opposition Brief filed by Defendant, Corizon ("Corizon"), which includes a Certification of Bruce Blatt, M.D. ("Dr. Blatt").  For the reasons set forth below, the Petition is denied.

## I.    BACKGROUND

Harper filed suit against Defendants under the Civil Rights Act, 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment.[1]  Compl. at 6.  Specifically, Harper alleges that Defendants have ignored his need to see an Ear, Nose and Throat Specialist regarding his acid reflux disease.  Id. at 3.  Harper filed a "Motion for A Temporary Restraining Order And A Preliminary Injunction Order To Show Cause And Temporary Restraining Order" on May 14, 2014, which was denied after Corizon

---

[1] Harper is proceeding pro se.  It is well-settled that pleadings from pro se litigants must be liberally construed.  See Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).

filed a Brief in Opposition to Harper's Motion for Preliminary Injunctive Relief which included a

Certification by Dr. Blatt.[2]  (See Order dated Aug. 11, 2014 (Doc. No. 28)).

On December 30, 2014, Harper filed a "Petition for a Temporary Restraining Order And

A Preliminary Injunction" related to his diet and medications.  (See Pl.'s Pet. for TRO and/or

Prel. Inj.)  Harper states that he was taken to Thomas Jefferson University for an upper and lower

endoscopy with Daniel M. Quirk, M.D. ("Dr. Quirk") on October 8, 2014.  (Id. ¶ 3.)  Harper

alleges that Dr. Quirk's diagnosis was suggestive of Barrett's Esophagus and large internal

hemorrhoids.  (Id. ¶¶ 3, 4.)  According to Harper, Dr. Quirk prescribed a high fiber diet which

Defendants have not provided because "there is an informal policy at Curran-Fromhold

Correctional Facility to the denial of special dietary needs for inmates suffering from acid reflux

and or Barrett's disease."  (Id. ¶ 5.)  Additionally, Harper alleges that he was denied prescribed

medicine for weeks.  (Id.)  Harper states that he is entitled to a temporary restraining order

requiring Defendant to arrange special diet trays in accordance with Dr. Quirk's treatment plan

and a preliminary injunction requiring that Defendants carry out Dr. Quirk's plan of treatment.

(Id. ¶ 12.)

Corizon argues that Harper's Petition should be denied.  (See Def.'s Br. Opp'n Pl.'s Pet.

for TRO and/or Prel. Inj.)  Corizon relies upon Dr. Blatt's Certification stating that Harper is

receiving medically appropriate care for his acid reflux and hemorrhoids and, in his medical

opinion, Harper's current diet is medically appropriate when combined with the medications that

have been prescribed.  (Id.; Ex. A (Dr. Blatt Decl.) ¶ 19.)  Dr. Blatt, a Board Certified Internist

and licensed physician in the Commonwealth of Pennsylvania, is employed by Corizon at the

---

[2] Corizon Health, Inc. is a corporate prison health care provider.  Talbert v. Kaplan, No. 12-6533, 2013 WL
4434214, at *1, 4 (E.D. Pa. Aug. 20, 2013).

Philadelphia Prison System.  (Id. ¶¶ 1- 3.)

Dr. Blatt reviewed Harper's Prison Medical Chart.[3]  (Id. ¶ 5.)  Dr. Blatt states that "[m]y review of the medical chart indicates that Mr. Harper had both a colonoscopy and upper endoscopy on **October 8, 2014.**  The colonoscopy revealed internal hemorrhoids, and the upper endoscopy revealed Barrett's Esophagus.  Barrett's Esophagus is affiliated with chronic reflux and requires periodic surveillance by endoscopy."  (Id. ¶ 7.)  He goes on to state that "I saw Mr. Harper for a medical appointment on **October 22, 2014,** to discuss the results of the colonoscopy and upper endoscopy of **October 8, 2014.**  I ordered (1) Omeprazole 20mg bid, for 90 days, (Omeprazole is in a group of drugs called proton pump inhibitors. Omeprazole decreases the amount of acid produced in the stomach.  Omeprazole is used to treat symptoms of gastroesophageal reflux disease (GERD) and other conditions caused by excess stomach acid); (2) Hydrocil, (a fiber laxative), one packet with 8 ounces of liquid as needed, for 90 days; and a follow-up appointment with Dr. Quirk, the gastroenterologist."  (Id. ¶ 8.)

He further states that "[o]n **November 24, 2014,** Mr. Harper was seen by a nurse for complaints of a headache."  (Id. ¶ 9.)  In addition, Dr. Blatt states that "[t]he patient was evaluated by Dr. Quirk, his gastroenterologist at Jefferson, on **December 9, 2014.**  Mr. Harper complained of continued reflux and hard stools with occasional bleeding.  For his Barrett's Esophagus, Dr. Quirk advised the patient to avoid caffeine, fatty food and lying down within 4 hours of eating.  He recommended an upper endoscopy in 1 year, and he recommended Omeprazole 20 mg bid and Zantac 300 mg at bedtime."  (Id. ¶ 10.)  Dr. Blatt states that "I ordered those medications, Omeprazole 20 mg bid, and Ranitidine, (which is the generic form

---

[3]Prison Medical Charts are kept in the usual course of business of Corizon at the Philadelphia Prison System.  (Def.'s Br. Opp'n Pl.'s Pet. for TRO and/or Prel. Inj.; Ex. A., Blatt Decl., ¶ 5.)

of Zantac), 300 mg at bedtime, to treat gastroesophageal reflux disease (GERD) upon Mr. Harper's return to the Philadelphia Prison System." (Id. ¶ 11.)

According to Dr. Blatt, "[f]or Harper's internal hemorrhoids, Dr. Quirk recommended a high-fiber diet, Fiber pill supplements, and Colace, a laxative prescribed to treat occasional constipation, and Anusol, a hemorrhoid suppository. I ordered Fiber tablets bid, hemorrhoid suppositories bid prn and Colace 100 mg bid prn, a laxative prescribed to treat occasional constipation." (Id. ¶ 12.) He notes that "[o]n **December 13, 2014,** Mr. Harper was seen by a nurse for complaints of a migraine headache" and "[o]n **December 15,2014,** Mr. Harper was seen by a nurse for complaints of upper respiratory symptoms, due to seasonal allergies." (Id. ¶¶ 13, 14.) Also, he notes that "[o]n **December 19, and 31, 2014,** Mr. Harper was scheduled to see the dentist." (Id. ¶ 15.)

Dr. Blatt sets forth the following two points:

> 1. The Philadelphia Prison System does have a Policy for Therapeutic Diets. (See PPS Policy & Procedure 4.E.20, Exhibit "2"). The policy states that the Philadelphia Prison System will provide the following types of therapeutic diets: (a) clear liquid; (b) full liquid; (c) renal; (d) dietetic snacks, and (e) high protein snack; and

> 2. The Philadelphia Prison System does **not** have a high fiber diet. Therefore, for Mr. Harper's complaint regarding hemorrhoids, I prescribed Fiber tablets bid, hemorrhoid suppositories bid pm, and Colace 100 mg bid pm, a laxative prescribed to treat occasional constipation. I also told Mr. Harper to drink a lot of liquids. The most recent Medication Administration Record Sheet for **December 2014,** indicates that Mr. Harper has been given those medications as Keep-on-Person medications to take as directed.

(Id. ¶¶ 16, 17.)

Dr. Blatt notes that "[t]he recent medical appointments for Mr. Harper, noted above in paragraphs #9, #13, #14, and #15, do not note any complaints about acid reflux or constipation." (Id. ¶ 18.) Dr. Blatt concludes his Certification by stating that "[i]t is my opinion within a reasonable degree of medical certainty that Mr. Harper *is* receiving medically appropriate care for his acid reflux and hemorrhoids.  It is also my opinion that Mr. Harpers current diet when combined with the medications that have been prescribed are medically appropriate." (Id. ¶ 19.)

## II.    **LEGAL STANDARD**

Harper seeks a temporary restraining order requiring Defendant to arrange special diet trays in accordance with Dr. Quirk's treatment plan and a preliminary injunction requiring Defendants to carry out the plan of treatment.  (Pl.'s Pet. for TRO and/or Prel. Inj. ¶ 5.)  Though there are distinct standards necessary to attain a TRO and a permanent injunction, the elements to be proven by Harper in order to obtain such injunctive relief are similar.

For instance, to attain a TRO, a Plaintiff must establish that: (1) Plaintiff is likely to succeed on the merits; (2) there is a  potential for irreparable injury to Plaintiff if relief is not granted; (3) the State Defendants will not be substantially harmed if relief is granted; and (4) the TRO will not adversely affect the public interest.[4]  Fink v. Supreme Court of Penn., 646 F. Supp. 569, 570 (M.D. Pa. 1986).  In order for the Court to grant a permanent injunction, the Plaintiff must demonstrate that: (1) Plaintiff has shown actual success on the merits; (2) Plaintiff will be

---

[4]Courts within this Circuit have noted the similarities between a TRO and a preliminary injunction, and have applied the same standards in determining their application.  See Nutrasweet Co. v. Vit-Mar Enters., Inc., 112 F.3d 689, 693 (3d Cir. 1997); see also BABN Techs. Corp. v. Bruno, No. 98–3409, 1998 WL 720171, at *3 (E.D. Pa. Sept. 2, 1998) (holding that the standard for a temporary restraining order is the same as that for a preliminary injunction); Cooper v. City of Phila., 18th Dist., No. 93–3007, 1993 WL 274192, at *1 (E.D. Pa. July 2, 1993) (same).

irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will not result in even greater harm to the State Defendants; and (4) the injunction would be in the public interest.  See Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001) (citing ACLU v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n.2–3 (3d Cir. 1996)).

In this case, to garner a TRO and/or a permanent injunction, Harper bears the burden of establishing all four elements.  See Shields, 254 F.3d at 482; Cooper, 1993 WL 274192, at *3 (stating that where movant cannot establish each element of the test, a temporary restraining order should not be issued).  "Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution."  Steedley v. McBride, 530 F. App'x 101, 103 (3d Cir. 2013) (citing Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995)); see also Wesley v. Sec'y Penn. Dept. of Corr., 569 F. App'x 123, 125 (3d Cir. 2014) ("Furthermore, a request for injunctive relief in the prison context must be viewed with great caution because of the intractable problems of prison administration.").

As these forms of injunctive relief share similar standards, we analyze them in conjunction.  In consideration of the facts of this case, we find that Harper cannot satisfy the necessary elements to obtain either a TRO or a permanent injunction.  Consequently, his Petition for Injunctive Relief will be denied.

III.   **DISCUSSION**

There is no need to examine whether Harper meets all of the elements because it is abundantly clear that he cannot show the "irreparable harm" element.  Harper's failure to establish "irreparable harm" alone establishes that he is not entitled to a TRO and/or Preliminary

6

Injunction.  In order to demonstrate "irreparable harm," Harper must point to an imminent risk of irreparable injury that "'cannot be redressed by a legal or an equitable remedy following trial.'" Hynoski v. Columbia Cnty. Redevelopment Auth., 485 F. App'x 559, 563 (3d Cir. 2012) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)); see also Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992) ("In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.").  The plaintiff bears the burden of establishing a "clear showing of immediate irreparable injury."  Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989) (citation omitted).  "Additionally, 'a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future.'"  Wesley, 569 F. App'x at 125 (quoting Campbell, 977 F.2d at 91)).  "'Rather, the moving party must make a clear showing of *immediate* irreparable harm.'"  Id. (quoting Campbell, 977 F.2d at 91)).

Harper argues that he is "suffering irreparable harm in the form of continuing physical and mental pain and suffering and an increasing risk that the Barrett's [Esophagus] will evolve into a more complete state, which is cancer."  (Pl.'s Pet. for TRO and/or Prel. Inj. ¶ 7.).  Harper makes these serious claims, but fails to provide any medical evidence in support of them. Furthermore, he does not provide any evidence to refute Dr. Blatt's medical opinion that he is receiving medically appropriate care for his acid reflux and hemorrhoids.

In contrast, Corizon presents medical evidence that Harper will not suffer "irreparable harm" absent the relief sought.  Dr. Blatt's Certification states that Harper is receiving medically appropriate care for his acid reflux and hemorrhoids and that his diet, when combined with medications that have been prescribed, are medically appropriate.  (Def.'s Br. Opp'n Pl.'s Pet. for

TRO and/or Prel. Inj.; Ex. A. ¶ 19 .)  Dr. Blatt premises his conclusions on his own examination of Harper's Medical Chart.  (See id.)

Based upon Dr. Blatt's Certification, it does not appear that Harper has a medical condition that is growing increasingly and permanently worse without immediate treatment due to the diet and the prison's administration of his prescribed medicines.  Harper simply fails to demonstrate that the prison diet and its administration of his medicine places him in danger of immediate harm.  Since Harper bears the burden of establishing the "irreparable harm" element of the four-part test, his failure to satisfy the second element proscribes the entrance of injunctive relief by this Court.  See Karpov v. Karpov, 555 F. App'x 146, 148 (3d Cir. 2014) ("As [Plaintiff] has the burden to establish every element of the four-part test for determining whether a preliminary injunction should be granted, her failure to show immediate irreparable injury alone establishes that she is not entitled to a preliminary injunction.")

In addition, we find that Harper has not shown a reasonable probability of success on the merits.  In order to prevail on an Eighth Amendment claim based on a lack of medical treatment, Harper must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious."  Pierce v. Pitkins, 520 F. App'x 64, 66 (3d Cir. 2013) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  "Deliberate indifference requires proof that the official 'knows of and disregards an excessive risk to inmate health or safety.'"  Id. (quoting Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003)).  "Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'"  Id. (quoting Inmates

of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). "Allegations of negligent treatment or medical malpractice do not trigger constitutional protections." Id. (citing Estelle v. Gamble, 429 U.S. 97, 105–06 (1976)). Based upon Dr. Blatt's description of the medical treatment offered and given to Harper to date, specifically, regarding his diet and the administration of his medicine, there is a low probability that Harper will be successful in meeting this standard.

## IV.    CONCLUSION

We note that an injunction is "an extraordinary remedy, which should only be granted in limited circumstances." Novartis Consumer Health v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (citation omitted); see also Am. Tel. & Tel. Co. v. Winback & Conserve Prog., Inc., 42 F.3d 1421, 1427 (3d Cir. 1994) (stating that a preliminary injunction is "an extraordinary remedy" and "should be granted only in limited circumstances"). Harper's failure to show the "irreparable harm" and "success on the merits" factors establishes that he is not entitled to injunctive relief since it is his burden to establish every element of the four-part test for determining whether injunctive relief should be granted. See Karpov, 555 F. App'x at 148. Consequently, Harper's Petition for a Temporary Restraining Order And A Permanent Injunction is denied.

An appropriate Order follows.