IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MAURICE D. HARPER, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> CORIZON, LOUIS GIORLA, MICHELLE : <br> FARRELL, FRANK ABELLO, MARIEL : <br> TRIMBLE, and PANTAL JEAN, : <br> : <br> Defendants. : <br> : | CIVIL ACTION <br><br><br><br> No.  14-639 |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                                                 **APRIL 9, 2015**

Presently before this Court is Defendants, Frank Abello, Corizon Health, Inc. ("Corizon"), Michele Farrell, Louis Giorla, Pantal Jean, and Mariel Trimble's (collectively, "Defendants"), Motion for Summary Judgment, pro se Plaintiff, Maurice Harper's ("Harper"),[1] "Statement of Disputed Factual Issues," and Harper's "Brief in Opposition to Defendants' Motion for Summary Judgment."  For the reasons set forth below, the Motion is granted.

**I.        BACKGROUND**

On February 7, 2014, Harper[2] filed a Complaint against Defendants, Corizon,[3] PPS

---

[1]Harper is proceeding pro se.  It is well-settled that pleadings from pro se litigants must be liberally construed.  See Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).

[2]Harper has been incarcerated in the Philadelphia Prison System ("PPS"), Curran Fromhold Facility ("CFCF"), from November 27, 2012, to the present.  (Defs.' Mot. Summ. J., Ex. B, Harper Dep. ("Harper Dep.") at 6.)

[3]Corizon is a corporate prison health care provider.

Commissioner Louis Giorla ("Commissioner Giorla"), CFCF Warden Michelle Farrell ("Warden Farrell"), CFCF Deputy Warden Frank Abello ("Deputy Warden Abello"), and Health Services Administrator Mariel Trimble ("Nurse Trimble"), under the Civil Rights Act, 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  See Compl.  Specifically, Harper alleges that Defendants have ignored his medical needs regarding his severe acid reflux disease.  Id. at 3.  Harper filed a "Motion for A Temporary Restraining Order And A Preliminary Injunction Order To Show Cause And Temporary Restraining Order" on May 14, 2014.  (Doc. No. 7.)  This Motion was denied by this Court on August 11, 2014, after Corizon filed a Brief in Opposition to Harper's Motion for Preliminary Injunctive Relief.  (Doc. No. 27.)  On December 30, 2014, Harper filed a "Petition for a Temporary Restraining Order And A Preliminary Injunction" related to his diet and medications.  (Doc. No. 31.)  This Petition was denied on January 12, 2015.  (Doc. No. 33.)  Defendants filed the instant Motion on January 28, 2015.  (Doc. No. 35.)  Harper, subsequently, filed a "Declaration in Opposition to Defendants' Motion for Summary Judgement," a "Statement of Disputed Factual Issues," a "Brief in Opposition," and a "Declaration in Opposition to Defendants' Motion for Summary Judgment."  (Doc. Nos. 40-43.)

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991).  The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

### III. DISCUSSION

#### A. Deliberate Indifference

In support of his claims of deliberate indifference to his serious medical needs in violation of the Eighth Amendment, Harper asserts the following in his "Declaration in

Opposition to Defendants' Motion for Summary Judgment" ("Harper Decl."). He was incarcerated at CFCF on November 26, 2012, awaiting trial for criminal charges against him. (Harper Decl. at 2.) On November 27, 2012, Harper informed the medical staff at CFCF during a medical screening that he suffered from various medical ailments including severe acid reflux which required prescription medication, and that he had been prescribed medication by his physician prior to incarceration. (Id. at 2-3.) Harper asserts that he was not given this necessary medication and was refused treatment for his acid reflux for such a long period of time by Defendants while incarcerated that he began experiencing "epigastric burning, upper respiratory suffering, difficulty swallowing, mucus build-up at the back of the throat, post nasal drip, difficulty breathing, gastric burning, rectal bleeding, epigastric pain, change in vision, and other complications associated with severe acid reflex." (Id.) He alleges that he continued to not receive any of his prescribed medications for months despite submitting a number of sick call request slips requesting the medications. (Id. at 4.) Harper claims that because he was not given adequate treatment for his reflux disease, the condition progressed into a condition called "Barrett's Esophagus."[4] (Id. at 4, 10.) Harper also complains of purple bruising on his uvula and a hole in the left of side of his pharynx. (Id. at 6.)

Harper asserts further that he requested that CFCF's medical personnel provide him with a substitute food diet which would help his condition, but was denied. (Id.) He claims that "due to Corizon's policy and procedures in not treating acid reflux as an [sic] chronic and emergent

---

[4]Barrett's Syndrome is a "peptic ulcer of the lower esophagus, often with stricture, due to the presence of columnar-lined epithelium, which may contain functional mucous cells, parietal cells, or chief cells, in the esophagus instead of normal squamous cell epithelium. It is sometimes premalignant, followed by esophageal adenocarcinoma. Called also Barrett's esophagus." Dorland's Illustrated Medical Dictionary, 28th Edition, 1994, p. 1625.

medical illness mandating treatment," he is now suffering with Barrett's Esophagus and large internal hemorrhoids along with pain and gastric burning. (Id. at 12.)

Based on the above, Harper claims that Defendants were "deliberately indifferent" to his serious medical needs in violation of his Eighth Amendment rights. (Harper Decl. at 1.) The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97 (1976). The Estelle Court determined that, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Id. at 106. Therefore, to succeed under these principles, Harper must demonstrate: (1) that the Defendants were deliberately indifferent to his medical needs, and (2) that those needs were serious.[5] Id.

It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." Id. As the Estelle Court noted: "[i]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105; see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). "Deliberate indifference," therefore, requires "obduracy and wantonness," Whitley v. Albers, 475 U.S. 312, 319 (1986),

---

[5] For purposes of this Memorandum Opinion only, we will assume that Harper's acid reflux condition constituted a "serious medical need." As will be discussed later in this section, we make this assumption based only on the fact that we do not find that any of the Defendants were "deliberately indifferent" to any of Harper's medical needs. A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Johnson v. Stempler, 373 F. App'x 151, 153 n.1 (3d Cir. 2010) (citing Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).

which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 842 (1994).

The Court of Appeals for the Third Circuit ("Third Circuit") has found "deliberate indifference" in a variety of circumstances, including where a prison official: (1) knows of a prisoner's need for medical treatment, but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.  <u>Durmer</u>, 991 F.2d at 68.

**1.    Corizon**

Harper claims that Corizon was deliberately indifferent to his acid reflux condition. "Mere disagreement as to the proper medical treatment" is "insufficient" to amount to deliberate indifference.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004) (quoting <u>Monmouth Cnty.</u>, 834 F.2d at 346.)  Moreover, prison medical authorities are "afford[ed] considerable latitude . . . in the diagnosis and treatment of the medical problems of inmate patients," and "negligence in the administration of medical treatment to prisoners is not itself actionable under the Constitution." <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979).  Therefore, to defeat a motion for summary judgment, Plaintiff "must present enough evidence to support the inference that the defendants are knowingly and unreasonably disregarding an objectively intolerable risk of harm."  <u>Heggenmiller v. Edna Mahan Corr. Inst. for Women</u>, 128 F. App'x 240, 246-47 (3d Cir. 2005) (quoting <u>Beers–Capitol v. Whetzel</u>, 256 F.3d 120, 132 (3d Cir. 2001)).

Although courts "will generally not find deliberate indifference when some level of medical care has been offered to the inmate," <u>Christy v. Robinson</u>, 216 F. Supp. 2d 398, 413-15

(D.N.J. 2002), the Third Circuit has explained that "deliberate indifference to serious medical needs" may include denial of "reasonable requests for medical treatment" by prison authorities when either "such denial exposes the inmate to undue suffering or the threat of tangible residual injury" or "knowledge of the need of medical care is accompanied by the . . . intentional refusal to provide that care." Id. (quoting Monmouth Cnty., 834 F.2d at 346). "Short of absolute denial, if necessary medical treatment is delayed for non-medical reasons, a case of deliberate indifference has been made out." Monmouth Cnty., 834 F.2d at 346. However, "misdiagnosis or preference for a certain type of treatment will not alone rise to the level of deliberate indifference." Christy, 216 F. Supp. 2d at 413 (citing United States ex rel. Walker v. Fayette Cnty., 599 F.2d 573, 575 (3d Cir. 1979)); see also Estelle, 429 U.S. at 106.

      Here, we are of the opinion that the record before us establishes that Corizon and its employees were not deliberately indifferent to Harper's acid reflux condition. In fact, the record reflects that Harper, not only received adequate treatment for this condition, but received good care. Moreover, Harper makes these serious claims, but fails to provide any medical evidence in support of them. Corizon has submitted Certifications from Bruce Blatt, M.D. ("Dr. Blatt"), who is Board Certified in Internal Medicine, and has been employed by Corizon for the past seven years, first in the Pennsylvania state prison system, and more recently in the PPS. (Defs.' Mot. Summ. J., Ex. D-F ¶¶ 3-4.) In addition, Corizon has submitted CFCF medical records that support Dr. Blatt's declarations.

      Dr. Blatt certifies that Harper is receiving medically appropriate care for his acid reflux and hemorrhoids, and that his diet, when combined with the medications that have been prescribed, are medically appropriate. (Id., Ex. F, Dr. Blatt's Decl. ("Dr. Blatt Decl.") ¶ 19 .) Dr.

Blatt premises his conclusions on his own personal knowledge of Harper's medical care and treatment, and his review of Harper's medical chart that was kept in the usual course of business of Corizon at the PPS. (Id. ¶¶ 1, 5.)

Dr. Blatt states that "[m]y review of the medical chart indicates that Mr. Harper had both a colonoscopy and upper endoscopy on **October 8, 2014.** The colonoscopy revealed internal hemorrhoids, and the upper endoscopy revealed Barrett's Esophagus. Barrett's Esophagus is affiliated with chronic reflux and requires periodic surveillance by endoscopy." (Id. ¶ 7.) He goes on to state that "I saw Mr. Harper for a medical appointment on **October 22, 2014,** to discuss the results of the colonoscopy and upper endoscopy of **October 8, 2014.** I ordered (1) Omeprazole 20 mg bid, for 90 days, (Omeprazole is in a group of drugs called proton pump inhibitors. Omeprazole decreases the amount of acid produced in the stomach. Omeprazole is used to treat symptoms of gastroesophageal reflux disease (GERD) and other conditions caused by excess stomach acid); (2) Hydrocil, (a fiber laxative), one packet with 8 ounces of liquid as needed, for 90 days; and a follow-up appointment with Dr. [Daniel] Quirk ("Dr. Quirk"), the gastroenterologist." (Id. ¶ 8.)

He further states that "[o]n **November 24, 2014,** Mr. Harper was seen by a nurse for complaints of a headache." (Id. ¶ 9.) In addition, Dr. Blatt states that "[t]he patient was evaluated by Dr. Quirk, his gastroenterologist at Jefferson, on **December 9, 2014**. Mr. Harper complained of continued reflux and hard stools with occasional bleeding. For his Barrett's Esophagus, Dr. Quirk advised the patient to avoid caffeine, fatty food and lying down within 4 hours of eating. He recommended an upper endoscopy in 1 year, and he recommended Omeprazole 20 mg bid and Zantac 300 mg at bedtime." (Id. ¶ 10.) Dr. Blatt states that "I

ordered those medications, Omeprazole 20 mg bid, and Ranitidine, (which is the generic form of Zantac), 300 mg at bedtime, to treat gastroesophageal reflux disease (GERD) upon Mr. Harper's return to the Philadelphia Prison System." (Id. ¶ 11.)

According to Dr. Blatt, "[f]or Harper's internal hemorrhoids, Dr. Quirk recommended a high-fiber diet, Fiber pill supplements, and Colace, a laxative prescribed to treat occasional constipation, and Anusol, a hemorrhoid suppository. I ordered Fiber tablets bid, hemorrhoid suppositories bid prn and Colace 100 mg bid prn, a laxative prescribed to treat occasional constipation." (Id. ¶ 12.) He notes that "[o]n **December 13, 2014,** Mr. Harper was seen by a nurse for complaints of a migraine headache" and "[o]n **December 15, 2014,** Mr. Harper was seen by a nurse for complaints of upper respiratory symptoms, due to seasonal allergies." (Id. ¶¶ 13, 14.) Also, he notes that "[o]n **December 19, and 31, 2014,** Mr. Harper was scheduled to see the dentist." (Id. ¶ 15.)

Dr. Blatt sets forth the following two points:

> 1. The Philadelphia Prison System does have a Policy for Therapeutic Diets. (See PPS Policy & Procedure 4.E.20, Exhibit "2"). The policy states that the Philadelphia Prison System will provide the following types of therapeutic diets: (a) clear liquid; (b) full liquid; (c) renal; (d) dietetic snacks, and (e) high protein snack; and
>
> 2. The Philadelphia Prison System does **not** have a high fiber diet. Therefore, for Mr. Harper's complaint regarding hemorrhoids, I prescribed Fiber tablets bid, hemorrhoid suppositories bid pm, and Colace 100 mg bid prn, a laxative prescribed to treat occasional constipation. I also told Mr. Harper to drink a lot of liquids. The most recent Medication Administration Record Sheet for **December 2014,** indicates that Mr. Harper has been given those

9


>medications as Keep-on-Person medications to take as directed.

(Id. ¶¶ 16, 17.)

Dr. Blatt notes that "[t]he recent medical appointments for Mr. Harper, noted above in paragraphs #9, #13, #14, and #15, do not note any complaints about acid reflux or constipation." (Id. ¶ 18.) Dr. Blatt concludes his Certification by stating that "[i]t is my opinion within a reasonable degree of medical certainty that Mr. Harper *is* receiving medically appropriate care for his acid reflux and hemorrhoids. It is also my opinion that Mr. Harper's current diet when combined with the medications that have been prescribed are medically appropriate." (Id. ¶ 19.)

The medical progress notes from CFCF support Dr. Blatt's declaration concerning Corizon's care and treatment of Harper's acid reflux condition. On June 19, 2014, Nurse Practitioner, Jean Pantal,[6] indicated that Harper was being sent to an off-site prison facility, Bustleton Radiology, for a "barium swallow test." (Defs.' Mot. Summ. J., Ex. C at 6 D-4060.) A report from Bustleton Radiology on this date stated that the "esophagus demonstrates NO OBSTRUCTING or constricting lesion or hiatal hernia. No free gastroesophageal reflux was noted." (Id. at D-4064.) The report further indicated that the "impression" of the test was that the "hypopharynx is normal roentgenographically." (Id.)

On July 24, 2014, Harper was seen at Jefferson University Hospital, Department of Gastroenterology, by Dr. Quirk for complaints of acid reflux and blood in his stools. (Id. at D-4076.) Dr. Quirk reported that Harper has chronic reflux and needs to resume his medication,

---

[6]At this time, we note that Harper also named a person named Pantal Jean as a Defendant in this action. However, this person has not been identified or served. Even assuming that Harper is referring to Jean Pantal, he has not established deliberate indifference on her part. Accordingly, all intended claims against her are dismissed.

and that he should proceed with an upper endoscopy.  (Id. at D-4077.)  Harper was, next, given a chest x-ray at Bustleton Radiology on August 8, 2014.  (Id. at D-4081.)  Dr. Anthony Limberakis reported the results as "[n]o evidence of acute cardiopulmonary pathology detected."  (Id.)  On August 21, 2014, Harper was seen at CFCF's medical facility and stated that he was getting all the medication that he needed.  (Id. at D-4097.)  Harper, next, was given a "general examination" at CFCF by Dr. Evaristo Evagalista on October 2, 2014.  (Id. at D-4108.)  Dr. Evagalista reported a normal examination of the abdomen, indicated that Harper had a history of acid reflux, and prescribed "Prilosec Capsule Delayed Release" daily.  (Id.)

On October 8, 2014, Harper had  "esophagogastroduodenoscopy" and colonoscopy procedures  performed at Jefferson University Hospital.  Dr. Quirk reported that the esophagus showed a "salmon colored mucosa distributed in a localized pattern, suggestive of short segment Barrett's Esophagus."  (Id. at D-4111.)  It was also reported that the stomach and duodenum were "normal."  (Id.)  In addition, Dr. Quirk reported that the colonoscopy indicated "large internal hemorrhoids," but that the "colonoscopy was otherwise normal."  (Id.)

Progress notes from October 22, 2014, indicate that Dr. Blatt discussed the results of these procedures with Harper.  (Id. at D-4127.)  Dr. Blatt indicated that "biopsy of the abnormal mucosa of [the] esophagus [is] consistent with Barrett's esophagus, but [there was] no dysplasia[7] on biopsy."  (Id.)  Dr. Blatt prescribed Omeprazole and Hydrocil liquid as needed, and fiber supplements for hemorrhoids.  (Id.)  He also stated that Harper's Barrett's Esophagus will need future surveillance, and a follow-up with Dr. Quirk.  (Id.)  The next upper endoscopy for such

---

[7]Dysplasia is defined as an "[a]bnormality of development; in pathology, alteration is size, shape, and organization of adult cells."  Dorland's, supra. at 517.

was recommended for a year in the future.  (Id., Ex. E.)  Harper was also given more fiber pills on October 29, 2014.  (Id. at D-4131.)  A progress note stated that Harper met with Dr. Blatt on December 1, 2014, and indicated that he complained that his reflux medication was not working.  (Id., Ex. E.)  Dr. Blatt advised him that he needed to stay on Prilosec because of his history of Barrett's Esophagus, and that a follow-up with "GI had already been ordered."  (Id.)

In addition, records from CFCF indicate that between December 2012 and the date of the filing of Defendants' Motion for Summary Judgment, Harper was administered, at one time or another, the following medications: Tylenol, Claritin, Excedrin, Prilosec, Naprosyn, Hemorrhoid ointment, Maalox, Zantac, Simethicone, aspirin, and a water pill.  (Id., Ex. I.)

In light of the above, we are of the opinion that Corizon was not deliberately indifferent to Harper's acid reflux condition.  We find that Harper's allegations are, at best, assertions of negligence or malpractice which do not amount to deliberate indifference.  See Estelle, 429 U.S. at 106.  As noted earlier, deliberate indifference requires "obduracy and wantonness."  Whitley, 475 U.S. at 319.  Harper has failed to present evidence meeting this standard.  Moreover, Harper has failed to provide any evidence that any alleged delay or deficiency in care led to an adverse effect on his acid reflux condition.  For these reasons, Harper's claim of deliberate indifference against Corizon is without factual or legal basis.  Accordingly, we grant summary judgment in favor of Corizon on this cause of action.

    **2.**   **Nurse Trimble**

At his deposition, Harper testified that he brought suit against Nurse Trimble because he explained his situation to her and she refused to help.  (Harper Dep. at 10.)  He added that he was scheduled to see an ENT specialist, but Nurse Trimble failed to tell him it was cancelled or why

it was cancelled.  (Id.)  However, Harper has failed to offer any support for these allegations. Moreover, such alleged conduct, even if true, does not amount to deliberate indifference to Harper's serious medical needs.  See Estelle, 429 U.S. at 106.  Therefore, we grant summary judgment in favor of Nurse Trimble.

**B.     Supervisory Liability**

"It is well settled that the doctrine of respondeat superior may not be employed to impose § 1983 liability on a supervisor for the conduct of a subordinate which violates a citizen's constitutional rights."  Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253, 263 (3d Cir. 1995); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Instead, for a supervisor to face liability, that supervisor must be personally involved in the alleged wrongs.  Id.  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  Rode, 845 F.2d at 1207.  For a failure to supervise claim, the plaintiff must prove that the defendant "exhibited deliberate indifference to the plight of the person deprived."  Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).  To show deliberate indifference, the plaintiff must "identify a specific supervisory practice that the defendant failed to employ" and "allege 'both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval.'" C.H. ex rel. Z.H. v. Olivia, 226 F.3d 198, 202 (3d Cir. 2000) (quoting Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997)).

Here, Plaintiff has brought suit against Commissioner Giorla, Warden Farrell, and Deputy

Warden Abello under a theory of supervisory liability.  We address each in turn.

### 1. Commissioner Giorla

During his deposition, Harper responded to the question why he was suing Commissioner Giorla by stating that "[t]o my understanding that he runs the PPS system, prison system, and he's ultimately responsible for operations and the training of all PPS employees." (Harper Dep. at 8.)  Harper also testified that he did not recall ever even meeting Commissioner Giorla. (Id.)

A plaintiff cannot merely speculate that a defendant may have had knowledge of or personal involvement in the deprivation of his rights. Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at 1208.  Here, this is exactly what Harper has done.  Harper asserts that Commissioner Giorla's position suggests personal involvement, knowledge, and/or acquiescence.  Plaintiff, however, has simply failed to present any evidence of such.  Accordingly, we grant summary judgment in favor of Commissioner Giorla on this claim.

### 2. Warden Farrell and Deputy Warden Abello

Regarding Warden Farrell, Harper testified that he had only spoken to her once about a leather jacket of his that was stolen or misplaced. (Harper Dep. at 9.)  He further testified that he brought suit against Warden Farrell because he "put in a grievance to her explaining to her my situation that I wasn't getting adequate treatment and she refused to help me." (Id. at 9-10.)  He added that Warden Farrell did respond to the grievance and signed it. (Id. at 10.)  Regarding Deputy Warden Abello, Harper stated that he brought suit against him because he answered and signed off on the same grievance. (Id.)

Here, Plaintiff's Complaint against Warden Farrell and Deputy Warden Abello should be dismissed for two reasons.  First, Harper's Complaint contains no factual allegations that these

two Defendants had any personal involvement in his medical care.  Moreover, Plaintiff has failed to offer any evidence that Warden Farrell and Deputy Warden Abello had personal involvement, knowledge, and/or acquiescence to the denial of medical care to him.  See C.H. ex rel. Z.H., 226 F.3d at 202.

However, even assuming that Plaintiff's assertions are true that these Defendants somehow denied him medical care for his reflux disease, such claims are without a basis in law and fact.[8] "Prisoners do not have a constitutional right to prison grievance procedures."  Heleva v. Kramer, 214 F. App'x 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)); see also Williams, No. 12-2412, 2013 WL 4787223, at *19 (E.D. Pa. Sept. 9, 2013). "[W]hen the claim underlying the administrative grievance process involves a constitutional right, the prisoner's right to petition the government for redress is the right to access the courts, which is not compromised by the prison's refusal to entertain his grievance."  Winn v. Dep't of Corr., 340 F. App'x 757, 759 (3d Cir. 2009) (quoting Flick v. Alba, 932, F.2d 728, 729 (8th Cir. 1991)); see also Willaims, 2013 WL 4787223 at *19.  Here, Plaintiff clearly has had access to this Court to assert his claims in the form of this instant action.  For these reasons, summary judgment is granted in favor of Warden Farrell and Deputy Warden Abello.

## IV.   CONCLUSION

In accordance with the above, we grant summary judgment in favor of Corizon, Nurse Trimble, Pantal Jean, Commissioner Giorla, Warden Farrell, and Deputy Warden Abello.  We, therefore, grant summary judgment in its entirety, and all claims against these Defendants are

---

[8] In addition, we have already determined that Harper received more than adequate care for his acid reflux condition.

dismissed.

    An appropriate Order follows.